UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WISCONSIN

MICHAEL SWENSON,
 Plaintiff,

v.

RICHLAND COUNTY, WISCONSIN;
 ZANE SUMWALT;
 CHRIS SHILDGEN;
 JASON SUTTON;
 ISAAC GERBER,
 Defendants.

**Civil Action No.:** 26-cv-311-wmc

FILED/REC'D

2026 APR -9  A 10: 46

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

**(42 U.S.C. § 1983)**

**I. INTRODUCTION**

1. This is an action under 42 U.S.C. § 1983 to redress the deprivation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, arising from a county's systemic and unconstitutional replacement of judicial process with administrative fiat.

2. This action arises from Plaintiff's warrantless arrest for alleged disorderly conduct–domestic, without probable cause or arguable probable cause, followed by the imposition and enforcement of significant restraints on Plaintiff's liberty and property.

3. Following Plaintiff's release, Defendants imposed and enforced conditions pursuant to an official Richland County policy, the "AMENDED RULE IN THE MATTER OF PROMULGATION OF LOCAL COURT RULES: BAIL CONDITIONS

REGARDING ARRESTS UNDER SEC. 968.075, STATS." (hereinafter "Local Rule")

4. Defendants executed this illegal blanket policy against Plaintiff using a standardized "ADDENDUM TO BAIL/BOND" (the "Addendum") form, which falsely represents that it is "approved and ordered by Richland County Circuit Court Judge Lisa McDougal." This is not a judicial order. It is an administrative policy calling itself a judicial order. No judicial officer reviewed Plaintiff's specific case or authorized the restraints imposed upon him. The conditions were imposed by Defendant Zane Sumwalt, a jailer, as part of a ministerial, non-discretionary administrative process subsequent to arrest.

5. As enforced, these conditions excluded Plaintiff from his residence and deprived him of access to his home, property, and children for approximately thirty-one (31) days. The restrictions were enforceable by immediate arrest and remained continuously in effect during that period.

6. During this entire 31-day period, in flagrant violation of the Supreme Court's mandates in *Gerstein v. Pugh* and *County of Riverside v. McLaughlin,* no judicial officer ever made a determination of probable cause for Plaintiff's warrantless arrest.

7. This 31-day exclusion from his home functioned as a *de facto* eviction, depriving Plaintiff of a significant property interest without any form of procedural due process—no notice, no hearing, and no review by a neutral decision-maker—as required by the Fourteenth Amendment.

8. Defendant Richland County, through its policies and practices, permitted Plaintiff's continued restraint without securing the prompt judicial review required by the Fourth Amendment.

9. This action challenges both Plaintiff's arrest and the systemic failure to provide constitutionally required safeguards following a warrantless arrest.

10. The Constitution does not permit the State to impose and enforce significant restraints on liberty and property following a warrantless arrest without a prompt, individualized judicial determination of probable cause.

## II. JURISDICTION AND VENUE

11. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because all events giving rise to this action occurred in Richland County, Wisconsin.

## III. PARTIES

13. Plaintiff Michael Swenson is an adult citizen of the United States and a resident of Richland County, Wisconsin.

14. Defendant Richland County, Wisconsin is a municipal entity responsible for the policies, customs, and practices of the Richland County Sheriff's Department and the operation of the Richland County Jail.

15. Defendant Zane Sumwalt was, at all relevant times, a jail official employed by Richland County. Acting in a ministerial, non-judicial capacity, he imposed the unconstitutional conditions of release upon Plaintiff by executing the Addendum. He is sued in his individual capacity.

16. Defendant Chris Shildgen was, at all relevant times, a deputy sheriff with the Richland County Sheriff's Department, acting under color of law, and the arresting officer in Plaintiff's case. He is sued in his individual capacity.

17. Defendant Jason Sutton was, at all relevant times, a deputy sheriff with the Richland County Sheriff's Department, acting under color of law who assisted Shildgen in the

investigation in Plaintiff's case, and also was an additional arresting officer. He is sued in his individual capacity.

18. Defendant Isaac Gerber was, at all relevant times, a deputy sheriff with the Richland County Sheriff's Department, acting under color of law, who enforced and warned Plaintiff under threat of arrest against violating the no-contact restriction after Plaintiff's release. He is sued in his individual capacity.

## IV. STATEMENT OF FACTS

### A. The Initial Complaints

19. On the morning of August 30, 2025, Plaintiff's spouse, Ocean Swenson, reported to Defendant Jason Sutton that she had been the victim of "a domestic" incident allegedly occurring the prior evening.

20. **First Allegation and Rejection:** The complainant first showed Defendant Sutton videos of an argument over truck keys. As documented in his official report, Defendant Sutton reviewed the videos and concluded that no crime had occurred, informing the complainant that he "did not believe [it] rose to the level of a domestic incident" and was "more of a couple's disagreement."

21. **Second Allegation and Rejection:** When her first allegation failed to produce a result, the complainant escalated, alleging that Plaintiff had locked her out of a utility room. Defendant Sutton again rejected her claim, informing her "again…that everything that I saw in her videos appeared to be a couple's disagreement… and nothing that would rise to the level of disorderly conduct had occurred."

22. **Third Allegation and Rejection:** The complainant then escalated a third time, alleging a bruise on her leg and that Plaintiff was sending "harassing messages" to her grandmother. Defendant Sutton reviewed the messages and again rejected her claim,

noting that "it looked as though Michael and her grandmother were having a conversation and that he was not harassing her." The messages provided to Defendant Sutton also contained significant exculpatory evidence, including information that the complainant had previously assaulted Plaintiff and threw his phone into a toilet and urinated on it.

23. This sequence of repeated, escalating, and unsubstantiated allegations, each of which was investigated and rejected by Defendant Sutton himself, provided overwhelming objective evidence that the complainant was not a reliable witness and was attempting to manipulate law enforcement to procure Plaintiff's arrest.

**B. Subsequent Allegation and Arrest Decision**

24. Approximately thirty minutes later, Ocean contacted Defendant Sutton again and made a fourth, more serious allegation, claiming she had been "attacked" in her driveway. Defendants Shildgen and Sutton responded to the residence.

25. At the residence, Ocean showed Shildgen a video that she claimed depicted Plaintiff pushing her. The video does not clearly depict a push or any unambiguous use of force which Shildgen admits in his report. The video clip also ends abruptly with no action taken to stop the recording, indicating it was clipped or edited.

26. During the investigation, Defendant Shildgen questioned Ocean regarding the circumstances of the interaction. When asked whether she had been keeping the vehicle keys from Plaintiff, Ocean responded, "it's a marital truck." When asked how Plaintiff pushed her while simultaneously taking the vehicle keys, Ocean responded, "I don't know."

27. Defendant Sutton contacted Plaintiff by telephone and asked him to return to the residence. Plaintiff thereafter informed Defendant Sutton to contact his attorney and

that he would not return. Plaintiff remained reachable provided his attorneys contact information and did not refuse communication.

28. During the investigation, Defendant Shildgen expressed frustration regarding Plaintiff's conduct, stating words to the effect that he did not "like this game playing."

29. Defendants Shildgen and Sutton stepped away from the complainant and muted their body-worn cameras.

30. After reactivating their body cameras, Defendant Shildgen stated to Defendant Sutton:

> "I don't know what else to do, otherwise we're going to keep getting called back here."

31. The arrest decision occurred directly after the muted discussion and in the context of (1) Defendant Sutton's prior determination that no crime had occurred, (2) conflicting and uncertain statements from the complainant, (3) video evidence that did not clearly establish a criminal act, and (4) the absence of any exigent circumstances.

32. A reasonably well-trained officer understands that domestic disputes are frequently used as leverage in divorce proceedings. When confronted with a complainant who explicitly states she has filed for divorce and "wants the house", that officer is on notice that any criminal accusation must be viewed with a high degree of skepticism.

33. Faced with substantial objective evidence suggesting a motive to fabricate for tactical advantage in a civil dispute, a reasonable officer's duty to investigate further and corroborate the new, more serious allegation becomes absolute.

34. At the time of the arrest decision, the defendants acted in conscious disregard of the objective facts undermining the complainant's credibility. They instead relied on pretext (Plaintiff's assertion of his right to counsel) and administrative convenience ("otherwise we're going to keep getting called back here") as the basis for the arrest.

The decision to credit the complainant's fourth and most dramatic allegation, after debunking her first three, was also objectively unreasonable.

35. At all relevant times, Defendants Shildgen and Sutton had sufficient opportunity to evaluate the available evidence and determine whether probable cause existed. Plaintiff was not arrested at the scene but instead voluntarily presented himself later that day at the Richland County Sheriff's Department.

36. On August 30, 2025, Plaintiff was arrested without a warrant by Defendants Shildgen and Sutton for alleged disorderly conduct – domestic, and was thereafter booked into the Richland County Jail by Defendant Zane Sumwalt.

## C. The Post-Arrest System

37. On or about August 30, 2025, Plaintiff Michael Swenson was arrested without a warrant for a misdemeanor offense of Domestic Disorderly Conduct, in violation of Wis. Stat. § 947.01(1).

38. Pursuant to the jail's procedures, a cash bond was set at $150.00. Plaintiff posted this bond.

39. The Wisconsin Supreme Court has adopted the 2025 Wisconsin Uniform Misdemeanor Bail Schedule, which governs the authority of law enforcement officers to release individuals arrested for misdemeanors prior to an initial court appearance. A true and correct copy of the relevant portions of this schedule is attached hereto as Exhibit A and incorporated by reference.

40. As set forth in its Preamble and flowchart (Exhibit A, pp. 81–82), the Uniform Bail Schedule provides law enforcement with only two, non-discretionary options for a misdemeanor arrestee: (1) release without a cash bond, or (2) require a cash bond from the pre-set schedule.

41. The Uniform Bail Schedule grants law enforcement officers no authority to create, impose, or enforce substantive, non-monetary conditions of release, such as a no-contact order or a residence exclusion. The power to impose such conditions is a judicial function reserved for judges and court commissioners under Wis. Stat. Ch. 969.

42. Notwithstanding the clear limitations of state law, Defendant Richland County maintains an official local court rule titled "Bail Conditions Regarding Arrests Under Sec. 968.075, Wis Stats." (the "Local Rule"). A true and correct copy of the Local Rule is attached hereto as Exhibit B and incorporated by reference.

43. The Local Rule is a blanket policy that applies automatically to a category of arrestees without any individualized judicial determination, in direct contravention of the requirements of Wisconsin law and the Constitution.

44. The Local Rule purports to be authorized under Wis. Stat. § 753.35, a statute that grants courts authority to create rules of pleading, practice, and procedure. However, the Local Rule imposes substantive conditions of bail, a subject governed exclusively by the Wisconsin legislature. The Local Rule is therefore *ultra vires*, as it exceeds the statutory authority upon which it claims to rest, rendering it a legal nullity.

45. The Local Rule unconstitutionally delegates core judicial power, stating: "It shall be the responsibility of the jailer who releases the arrested individual on a cash bond to notify the arrested individual of the no contact provision."

46. In contrast, Wisconsin Stat. § 968.075(5) contemplates only a temporary, short-term no-contact provision in connection with domestic abuse arrests, designed to operate in the period immediately preceding judicial review. As applied to Plaintiff, however, the Local Rule operated to impose and enforce an indefinite restraint—lasting approximately thirty-one (31) days—without any individualized judicial

determination, without a prompt probable cause review, and without any case-specific assessment of necessity. This divergence underscores that the restraint imposed on Plaintiff was not a limited statutory safeguard, but a non-judicial deprivation of liberty and property untethered from the procedural protections required by the Fourth and Fourteenth Amendments.

47. To implement this illegal policy, Defendant Sumwalt, required Plaintiff to sign the pre-printed Addendum form, which he completed by hand.

48. The Addendum contains the boilerplate language that it is "approved and ordered by Richland County Circuit Court Judge Lisa McDougal." This statement was false as applied to Plaintiff. No judicial officer reviewed the facts of Plaintiff's case, determined probable cause existed, or made an individualized finding that these severe restraints were necessary. A true and correct copy of the Addendum is attached hereto as Exhibit C and incorporated by reference.

49. The imposition of these conditions was a non-discretionary, ministerial act performed by an executive official (Sumwalt) pursuant to a mandatory, illegal blanket policy, under the guise of a judicial order.

50. Upon being informed of these conditions, plaintiff requested his initial appearance to be scheduled as promptly as possible. Defendant Sumwalt informed Plaintiff that the earliest he could schedule Plaintiff for initial appearance was at least twenty-one (21) days after arrest. Upon information and belief, individuals arrested for disorderly conduct and released while subject to significant restrictions of liberty in Richland County are routinely not presented to a judicial officer for review until at least twenty-one (21) days after arrest.

**D. Enforcement Without Judicial Order**

51. Following Plaintiff's release, the Richland County Sheriff's Department enforced the no-contact and residence exclusion restriction as a binding and mandatory condition.

52. On or about September 5, 2025, Defendant Isaac Gerber advised Plaintiff that any violation of the imposed restrictions would result in arrest. Defendant Gerber did not identify any written, individualized judicial order—signed by a judge—imposing those restrictions on Plaintiff. The restrictions were instead derived from the standardized bail addendum applied without case-specific judicial authorization.

**E. Prolonged Restraint Without Review**

53. As enforced, the restrictions excluded Plaintiff from his residence and deprived him of access to his home, freedom of association with his children, and most personal property for approximately thirty-one (31) days.

54. Plaintiff's first appearance did not occur until September 30, 2025.

55. Prior to that date, on September 29, 2025, the District Attorney declined to file charges. Nevertheless, the restrictions remained in effect until the case was formally called the following day.

56. The 31-day restrictions were therefore enforced solely pursuant to a local administrative policy, beyond the 72-hour statutory authority of Wis. Stat. § 968.075, and without any individualized judicial determination.

57. At no point during this 31-day period was Plaintiff afforded a hearing before a judicial officer to determine whether probable cause existed to justify this continuing seizure and extended restraint on his liberty.

**F. Failure to Utilize Available Probable Cause Procedures**

58. Wisconsin law provides a mechanism to obtain prompt judicial review following a warrantless arrest through submission of a sworn probable cause statement, commonly documented using Form CR-215.

59. No CR-215 form was prepared or submitted. No effort was made to obtain a probable cause determination within forty-eight (48) hours.

60. The failure to utilize available procedures to obtain a prompt probable cause determination further demonstrates deliberate indifference to Plaintiff's Fourth Amendment rights.

## G. Continuing Effects on Possession of Residence

61. On September 30, 2025, the same date the restrictions ended, a temporary order in Plaintiff's divorce proceeding awarded Plaintiff's spouse exclusive use and possession of the residence.

62. At that time, Plaintiff had already been excluded from the residence for approximately thirty-one days due to Defendants' actions.

63. This exclusion materially altered the status quo presented to the family court.

64. As a result, Plaintiff remained unable to return to his residence until March 16, 2026.

65. Plaintiff's loss of possession therefore extended well beyond the initial restriction and was a direct and foreseeable consequence of Defendants' conduct.

## V. MUNICIPAL POLICY OR PRACTICE (MONELL)

66. Defendant Richland County is liable for the constitutional violations suffered by Plaintiff because they were caused by an official municipal policy.

67. A County judicial officer, acting in a legislative/administrative capacity as a county final policymaker, promulgated the Local Rule, an express written policy that is unconstitutional on its face.

68. The Local Rule is unconstitutional because it mandates the imposition of severe restraints on liberty and property through an illegal blanket policy, replacing the required individualized judicial determination with an automatic administrative process, and unconstitutionally delegates this core judicial function to executive officers.

69. This policy and custom created a system that makes impossible a prompt judicial determination of probable cause for warrantless arrestees released on conditions restricting liberty, in direct contravention of the clearly established requirements of *Gerstein* and *Riverside*.

70. Sheriff Porter, as the final policymaker for the Sheriff's Department, was deliberately indifferent to this long-standing, unconstitutional policy and custom, which was illegal under established state law, and authorized or ratified its enforcement by his deputies and jail staff.

71. Richland County failed to implement procedures to ensure that (1) probable cause was established prior to or promptly following a warrantless arrest, and (2) any continuing restraints on liberty or property were subjected to individualized judicial review.

72. Upon information and belief, these policies and practices were not limited to Plaintiff, but were applied to other similarly situated individuals arrested without a warrant in Richland County.

73. These practices were sufficiently widespread and persistent to constitute official policy attributable to Richland County.

74. This official policy and custom was the moving force behind the violation of Plaintiff's Fourth and Fourteenth Amendment rights.

## VI. CLAIMS FOR RELIEF

## COUNT I

### Fourth Amendment – False Arrest

(Against Shildgen and Sutton)

75. Plaintiff incorporates all prior paragraphs.

76. The Fourth Amendment prohibits arrests without probable cause.

77. Defendants Shildgen and Sutton lacked probable cause, or even arguable probable cause, at the time of Plaintiff's warrantless arrest. They acted in the face of (a) known exculpatory evidence, (b) objective facts that cast significant doubt on the complainant's credibility and motive, and (c) admittedly ambiguous subsequent evidence, and they relied impermissibly on Plaintiff's assertion of his right to counsel as a pretext for the arrest.

78. Defendants failed to resolve these inconsistencies before depriving Plaintiff of liberty.

79. No reasonable officer could rely on the complainant's accusations under these circumstances without further investigation, and doing so was objectively unreasonable in light of the known inconsistencies and exculpatory evidence.

80. Under these circumstances, no reasonable officer could conclude that probable cause or arguable probable cause existed.

81. As a direct and proximate result, Plaintiff was unlawfully seized and deprived of liberty.

## Count II

### Fourth Amendment – Unreasonable Seizure / Pretrial Restraints / Continuing Seizure

(Against All Individual Defendants)

82. Plaintiff incorporates all prior paragraphs. The conditions imposed on Plaintiff were a significant deprivation of liberty significantly onerous to constitute a continuing seizure of his person and property. This 31-day seizure was *per se* unreasonable because it was imposed and maintained without a prompt judicial determination of probable cause, in direct violation of the clearly established 48-hour rule of *County of Riverside v. McLaughlin*. The enforcement of these conditions pursuant to a county policy was objectively unreasonable.

**Count III**

**Fourteenth Amendment – Procedural Due Process**

(Against All Individual Defendants)

83. Plaintiff incorporates all prior paragraphs. Defendants deprived Plaintiff of his clearly established liberty and property interests including his home and freedom of association for thirty-one (31) days. This deprivation occurred with zero process, as it was the result of the automatic, ministerial application of an unlawful administrative policy, not a neutral adjudicative process providing notice and an opportunity to be heard.

84. As a result, Plaintiff was deprived of liberty and property without due process of law in violation of the Fourteenth Amendment.

**Count IV**

**Municipal Liability Under 42 U.S.C. § 1983 (*Monell*)**

**(Against Richland County)**

85. Plaintiff incorporates all prior paragraphs. Defendant Richland County, through its Sheriff and local court rules, established an official, written policy (Exhibit B) that

directs its jail personnel to impose a residence exclusion on individuals arrested for domestic abuse offenses who are released on cash bail.

86. This policy is unconstitutional on its face because it unlawfully delegates a core judicial function to non-judicial executive officers and mandates a "continuing seizure" without providing for a prompt judicial determination of probable cause, in direct violation of the Fourth Amendment and the separation of powers.

87. The constitutional violations suffered by Plaintiff were a direct and proximate result of the execution of this official policy by Defendant Sumwalt. Defendant Richland County is therefore liable for the injuries caused by its unconstitutional policy.

**Count V**

**Indemnification Claim**

**(Against Richland County)**

88. Plaintiff incorporates all preceding paragraphs.

89. Wisconsin law, WIS. STAT. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable, for acts within the scope of their employment.

90. At all times relevant to this action, Defendants, Sumwalt, Shildgen, Sutton and Gerber engaged in the conduct complained of while in the course of and scope of their employment with Richland County.

**VII. DAMAGES**

91. As a direct and proximate result of Defendants' actions, Plaintiff suffered compensatory damages, including but not limited to loss of liberty, unlawful exclusion from his residence, loss of use and enjoyment of his home, deprivation of access to personal property, and interference with familial relationships.

92. Plaintiff further suffered severe emotional distress, anxiety, humiliation, and significant disruption to his daily life and personal affairs.

93. Plaintiff's injuries were not limited to the period of formal restriction, but extended beyond that period, including the continued loss of possession of his residence until March 16, 2026, which was a direct and foreseeable consequence of Defendants' conduct.

94. Plaintiff also suffered economic and consequential damages, including expenses and losses associated with displacement from his residence and inability to access personal property.

95. Plaintiff is entitled to damages for the violation of his constitutional rights, independent of any other injury.

96. Plaintiff seeks punitive damages against the individual Defendants for their reckless or callous disregard of Plaintiff's clearly established constitutional rights.

97. Plaintiff further seeks nominal damages in the event that compensatory damages are not fully established.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1.  Declare that Defendants' actions violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from arrest without probable cause and from the imposition and enforcement of significant restraints on liberty and property without prompt, individualized judicial review;

2.  Declare that the policies, practices, and customs of Defendant Richland County, including the automatic imposition and enforcement of no-contact

restrictions without individualized judicial determination, are unconstitutional as applied;

3. Grant injunctive relief requiring Defendant Richland County to implement procedures ensuring that individuals arrested without a warrant and subjected to continuing restraints on liberty or property receive a prompt judicial determination of probable cause and review of any such restraints by a neutral judicial officer;

4. An award of compensatory damages in an amount to be determined at trial against all Defendants, jointly and severally, for the injuries, emotional distress, anxiety, humiliation, and significant disruption to his daily life and personal affairs suffered by Plaintiff;

5. Alternatively, award Plaintiff nominal damages if compensatory damages cannot be determined;

6. Award Plaintiff punitive damages against the individual Defendants in an amount sufficient to deter similar conduct, intentional and/or reckless disregard of Plaintiff's clearly established constitutional rights;

7. Award Plaintiff reasonable costs, expenses, and attorney's fees pursuant to 42 U.S.C. § 1988;

8. Find that Richland County is liable to defend this action against Defendants and to satisfy any judgment entered against them, by virtue of WIS. STAT. § 895.46.

9. Grant such other relief as the Court deems just and proper.

## IX. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated April 3, 2026.

Respectfully submitted,

/s/Michael Swenson
pro se
32784 Logan Rd
Lone Rock WI 53556
(608) 515-9426
swenson.mi.c@gmail.com